UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE SANDERS, DOUG BUTLER, DARREL FOLEY, GEORGE RENNER, AND ROGER SHRADER, individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD DOMINION FREIGHT LINE, INC.,<br><br>Defendant. | Case No.: 17cv2340-CAB-NLS<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>[Doc. No. 13 ] |

This matter is before the Court on Plaintiffs' motion to remand. [Doc. No. 13.] The motion has been fully briefed and the Court deems it suitable for submission without oral argument. For the reasons set forth below, the Court finds that Defendant has satisfied its burden to demonstrate that the amount in controversy exceeds $5 million by a preponderance of the evidence. Accordingly, the motion to remand is **DENIED**.

## Background

On September 2, 2016, Plaintiff Eugene Sanders, a former truck driver for Defendant Old Dominion Freight Line, Inc., filed a complaint in San Diego County Superior Court asserting claims on behalf of himself and putative classes of Defendant's truck drivers who

worked in California (hereinafter the "original complaint"). The original complaint asserted five claims under California's unfair competition and labor laws, and expressly alleged that the amount in controversy for the class claims was under $5 million. [Doc. No. 1-2 at 3, ¶ 3.]

On November 18, 2016, Defendant removed the original complaint to this Court, which was assigned Case No. 16cv2837-CAB-NLS. In the notice of removal in Case No. 16cv2837 ("NOR1"), Defendant asserted that all of the requirements for subject matter jurisdiction under the Class Action Fairness Act ("CAFA") were met insofar as minimum diversity exists and the amount in controversy exceeds $5 million. [Case No. 16cv2837, Doc. No. 1.] The NOR1 included calculations of the amount in controversy for each of Plaintiff's claims and explained the underlying assumptions for those calculations. [*Id.* at 6-16.] The NOR1 alleged that the amount in controversy is $6,341,246.50. [*Id.* at 16.]

On November 30, 2016, Plaintiff moved to remand Case No. 16cv2837 to state court. [Case No. 16cv2837, Doc. No. 7.] On February 2, 2017, this Court granted the motion to remand on the grounds that Defendant had not satisfied its burden to demonstrate that the amount in controversy exceeds $5 million by a preponderance of the evidence. [Case No. 16cv2837, Doc. No. 18.]

On October 20, 2017, when the parties were in state court, Plaintiff filed a Second Amended Complaint ("SAC") which added four new named plaintiffs to the case. [Doc. No. 1-2 at 210-247.] On November 17, 2017, Defendant filed a second Notice of Removal ("NOR2"), claiming that the case meets the $5 million amount in controversy threshold. [Doc. No. 1.]

On December 15, 2017, Plaintiffs filed a motion to remand. [Doc. No. 13.] On January 5, 2018, Defendant filed an opposition to the motion to remand. [Doc. No. 16.] On January 12, 2018, Plaintiffs filed a reply to the opposition. [Doc. No. 17.] On January 19, 2018, Defendant filed an objection to and motion to strike Plaintiffs' new reply facts,

argument and authorities. [Doc. No. 18.][1] On January 25, 2018, Plaintiffs filed a response to Defendant's objection. [Doc. No. 19.]

## Legal Standards

A suit filed in state court may be removed to federal court by the defendant or defendants if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977-78 (9th Cir. 2013). Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity between the parties, *see* 28 U.S.C. § 1332. Here, however, Defendant argues solely that this Court has jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). Pursuant to CAFA, federal district courts have original subject matter jurisdiction over class actions in which a member of the plaintiff class is a citizen of a state different from any defendant and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "Section 1332(d) thus abandons the complete diversity rule for covered class actions." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006). However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Id.* at 685.

"A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez*, 728 F.3d at 981. Usually, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). However, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Mannheim*, 775 F.3d 1193, 1197 (9th Cir. 2015). Thus, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions

---

[1] Defendant's objection and motion to strike [Doc. No. 18] is **DENIED AS MOOT**.

in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

To remove a case pursuant to CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* "But evidence establishing the amount is required where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra*, 775 F.3d at 1197 (citations and internal quotation marks omitted). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

In sum, because Plaintiffs allege that less than $5 million is in controversy in the SAC and challenge Defendant's allegations in the NOR2, Defendant "has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Id.*

## Discussion

There is no dispute that the number of putative class members ("PCMs") exceeds the minimum required for CAFA jurisdiction or that the requisite diversity requirements are present. The only dispute concerns the amount in controversy and whether Defendant's estimate is a reasonable one. The SAC specifically alleges that the amount in controversy is less than $5 million. [Doc. No. 1-2 at 212, ¶3.] The NOR2 and opposition brief, meanwhile, each offer a different estimate of the amount in controversy, but both estimates exceed $5 million. [Doc. No. 1 at 24; Doc. No. 16 at 30.] All of these estimates generally rely on several assumptions that Plaintiffs dispute. Defendant breaks down its calculation by the various categories of relief sought in the complaint.

A. Meal Period and Rest Break Claims.

In the SAC, Plaintiff demands "one (1) hour of pay for each workday in which an off-duty meal period was not timely provided for each five (5) hours of work, and/or one (1) hour of pay for each workday in which a second off-duty meal period was not timely provided for each ten (10) hours of work," and "one (1) hour of pay for each workday in which a rest period was not timely provided as required by law." [Doc. No. 1-2 at 231, ¶¶ 44, 45.] The SAC is silent as to the potential total damages for these violations other than to state that the total is less than $5 million. [Doc. No. 1-2 at 212, ¶3.]

1. Damage estimate in Case No. 16cv2837.

In the NOR1, Defendant asserted that the amount in controversy ("AIC") on the meal and rest break claims was $3,584,317.20. [Case No. 16cv2837, Doc. No. 1 at 12.] In the sur-reply to the motion to remand, after removing class member workdays outside of California, Defendant's estimate was reduced to $3,066,631.40. [Case No. 16cv2837, Doc. No. 17 at 12.] To arrive at these totals, Defendant multiplied the number of workdays by the average hourly rate by the number of violations per workday. *Id.* Defendant assumed a 50% violation rate for both meal breaks and rest periods. *Id.* Thus, the formula Defendant used was:

|  | Avg. Hourly Rate | Violation Rate | Combined meal and rest periods per work day | Workdays | Total |
|---|---|---|---|---|---|
| **All Workdays** | $26.20 x | .5 x | 2.0 x | 136,806 | = $3,584,317.20 |
| **California Workdays** | $26.20 x | .5 x | 2.0 x | 117,047 | = $3,066,631.40 |

This Court found that Defendant's assumption of a 50% violation rate was unreasonable as Defendant did not offer any evidence supporting its use of this violation rate. [Case No. 16cv2837, Doc. No. 18 at 6-8.] Further, because this calculation constituted over half of Defendant's total AIC estimate, Defendant's failure to meet its

burden of proof as to the AIC on this claim was fatal to Defendant's assertion of jurisdiction under CAFA. *Id.* at 8.

        2. Damage estimate in NOR2.

In the NOR2, Defendant asserted the AIC on the meal and rest break claim is $5,120,965.01. [Doc. No. 1 at 15-19.] In the opposition to the current motion to remand, Defendant increased the AIC on the meal and rest break claim to $5,387,380.69. [Doc. No. 16 at 13-16.] To arrive at the total in the NOR2, Defendant uses the same hourly rate ($26.20) and the same number of California workdays (117,047) as in the NOR1. What is different between the NOR1 and the NOR2 is the violation rate. Defendant has now provided evidence to support its assumed violation rate, based on data collected regarding the Newly-Joined Plaintiffs from a system Defendant implemented after the original Plaintiff's employment ended. In April 2016, Defendant "implemented a system specifically for recording and tracking its California-based line haul drivers' meal and rest breaks, which includes programming that determines, based on the drivers' recorded time worked, whether an "infraction" of the California meal or rest break requirements occurred for any meal or rest break required to be provided or authorized and permitted on each day worked. . . " [Doc. No. 1 at 4-5, ¶6; Doc. No. 1-3.]

The data from Defendant's recording and tracking system for line haul drivers' meal and rest breaks reflects the following total number of meal and rest break "infractions" for each of the Newly-Joined Plaintiffs between March 31, 2016 and November 1, 2017, as follows:

| Newly-Joined Plaintiff | Total Meal Break Infraction Days | Total Rest Break Infraction Days | Total Recorded Days Worked | Meal Break Infraction Days Percentage | Rest Break Infraction Days Percentage |
|---|---|---|---|---|---|
| Butler | 166 | 107 | 167 | 99.40% | 64.07% |
| Foley | 338 | 234 | 344 | 98.26% | 68.02% |
| Renner | 156 | 102 | 163 | 95.71% | 62.58% |
| Shrader | 361 | 201 | 376 | 96.01% | 53.46% |

[Doc. No. 1 at 16, ¶34; Doc. No. 1-3.]

Defendant then assumes, based on the lowest meal and rest break infraction rates experienced by the Newly-Joined Plaintiffs, that each of the PCMs will claim to have not been provided compliant meal breaks during 95.71% of their total workdays and to not have been authorized and permitted to take compliant rest breaks during 53.4% of their total workdays. [Doc. No. 1 at 17, ¶35.]

Based on this evidence and the assumption that the Newly-Joined Plaintiffs' infraction rate is similar to the PCMs, Defendant calculates the AIC for the penalties/premium pay for non-compliant meal breaks as follows:

**Meal Breaks**

| Average Hourly Rate | Infraction Days Rate | Total Number Of Workdays | Amount In Controversy |
|---|---|---|---|
| $26.20 | 95.71% | 117,047 | $2,935,072.91 |

Similarly, Defendant calculates the AIC for penalties/premium pay for non-compliant rest breaks as follows:

**Rest Breaks**

| Average Hourly Rate | Infraction Days Rate | Total Number Of Workdays | Amount In Controversy |
|---|---|---|---|
| $26.20 | 53.46% | 117,047 | $1,639,421.14 |

In addition to the penalty/premium pay amounts set forth above, Defendant assumes that Plaintiffs also seek compensation for the actual unpaid rest breaks as follows:

**Unpaid Rest Breaks**

As set forth above, the PCMs worked an average of 9.53 hours per workday. After subtracting thirty minutes to account for meal breaks required to be provided, the PCMs worked an average of 9.03 net hours per workday, thus entitling each PCM to be authorized and permitted to take at least two ten-minute rest breaks per workday (9.03 ÷ 4 = 2.25). The total

7

number of California workdays (117,047) multiplied by the lowest rest break infraction rate experienced by the Newly-Joined Plaintiffs (53.46%) results in a total number of California rest break infraction workdays of 62,573 (117,047 x 53.46%). Based on the foregoing and the allegations in the SAC that Defendant *never* paid for rest breaks, Defendant calculates the amount in controversy on Plaintiff's claim for wages based on unpaid rest breaks, as follows:

> 62,573 (rest break infraction workdays)
> x 20/60 (20 unpaid rest break minutes per workday)
> x $26.20 (average hourly wage)
> = **$546,470.96**

[Doc. No. 1 at 18, ¶39.]

Therefore, in the NOR2, Defendant calculates the total AIC for the First Cause of Action as follows:

$2,935,072.91 + $1,639,421.14 + $546,470.96 = **$5,120,965.01.**

3. Damage estimate in opposition to motion to remand.

In the opposition to the motion to remand, Defendant provides a slightly different calculation, in response to Plaintiffs' primary objection (in the motion to remand) that (in the NOR2) Defendant did not use the actual violation rates of all the PCMs (now that Defendant has a system that can track such data) and, instead, assumed the violation rates for the PCMs were similar to the violation rates for the Newly-Joined Plaintiffs.

In opposition to the motion to remand, for the time period April 1, 2016 through November 17, 2017, for which Defendant does have actual data (hereinafter the "Breaks Data"), Defendant uses the average infraction rate and the average effective hourly rate (and uses California-only dispatch days) and calculates the AIC as follows:

|  | CA-only dispatch days x | Average Days worked Infraction Rate x | Average Effective Hourly Rate + | Amount in Controversy |
|---|---|---|---|---|
| Meal | 56,919 | 92.45% | $27.05 | $1,423,414.70 |
| Rest | 56,919 | 96.92% | $27.05 | $1,492,237.45 |

8

| | | | | |
|---|---|---|---|---|
| Subtotal | | | | $2,915,652 |
| Less: Sec. 226.7 Pmts Made | 595 | | $27.05 | ($16,094.75) |
| TOTAL: | | | | $2,899,557.40 |

As for the unpaid rest breaks[2] for April 1, 2016 through November 17, 2017, Defendant calculates the AIC as follows:

| | CA-only Dispatch Days x | Average Days Worked Infraction Rate x | Unpaid Rest Break Time Per Day x | Average Effective Hourly Rate = | Amount in Controversy |
|---|---|---|---|---|---|
| Unpaid Rest breaks | 56,919 | 96.92% | 0.33 | $27.05 | $492,438.36 |

For the time period September 2, 2012 through March 31, 2016, Defendant uses the lowest infraction rate from the 4-1-16 thru 11-17-17 period and calculates the AIC for the meal and rest break payments as follows:

---

[2] Plaintiffs argue (for the first time in reply) that the request for the unpaid rest breaks, in addition to the penalty pay, is essentially double recovery. [Doc. No. 17 at 2.] In support of that argument, Plaintiffs cite to *Asetek Holdings, Inc. v. CoolIT Sys.,* Case No. C-12-4498 EMC, 2013 U.S. Dist. LEXIS 147829, at *4 (N.D. Cal. Oct. 11, 2013). However, *Asetek* pertains to the double recovery rule in patent cases, where a patentee cannot sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damages fully compensate the patentee for infringement by users. *Id.* Here, the issue is whether it is reasonable (for purposes of calculating the AIC) for Defendant to interpret the SAC to be seeking penalty payments in addition to payment for the actual unpaid rest breaks. *Asetek* does not address that issue. Nevertheless, even if the amounts for unpaid rest breaks are excluded from the AIC, the reasonable estimates for inaccurate wage statements and waiting time penalties (see below) bring the total AIC well above the $5 million requirement.

|  | CA-only Dispatch Days x | Lowest Days Worked Infraction Rate x | Average Effective Hourly Rate = | Amount in Controversy |
|---|---|---|---|---|
| Meal | 82,471 | 35.60% | $24.02 | $705,219.42 |
| Rest | 82,471 | 51.36% | $24.02 | $1,017,417.68 |
| Total | | | | $1,722,637.10 |

As for the unpaid rest breaks for September 2, 2012 through March 31, 2016, Defendant calculates the AIC as follows:

|  | CA-only Dispatch Days x | Lowest Days Worked Infraction Rate x | Unpaid Rest Break Time Per Day x | Average Effective Hourly Rate = | Amount in Controversy |
|---|---|---|---|---|---|
| Unpaid Rest Breaks | 82,471 | 51.36% | .33 | $24.02 | $335,747.83 |

Therefore, in the opposition, Defendant calculates the total AIC for the First Cause of Action as follows:

$3,328,995.76 + $2,058,384.93 = **$5,387,380.69**.

### 4. Analysis.

As set forth above, Plaintiffs' primary objection to the NOR2 calculation is that it fails to explain why it is reasonable to extrapolate the Newly-Joined Plaintiffs' infraction rate to all of the PCMs when Defendant's timekeeping system can now track such violations for all PCMs. [Doc. No. 13-1 at 3.] In response, Defendant has provided an additional calculation that utilizes an average of the actual violation rates for the time period where such data is available, and then extrapolates the lowest violation rate for the prior years where the actual data is unavailable. Either way, Defendant's calculations are now based on facts and evidence derived from Defendant's actual business records and its interpretation of the allegations of the SAC, which reasonably substantiate the violation rates applied to each claim in the SAC. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015) (defendants met burden of proof because they "relied on

reasonable chain of logic" and presented sufficient evidence to establish amount in controversy exceeded $5 million).

Moreover, while Plaintiffs argue over the reliability or sufficiency of Defendant's evidence, they fail to provide any independent facts that would show the AIC is not met. For example, Plaintiffs fail to assert any different rate of violation or submit any evidence indicating a contrary rate of violation. Plaintiffs do not even submit their own declarations stating they experienced less frequent rates of violation than those asserted by Defendant. Therefore, Defendant's proof of the amount in controversy is adequate. *See Unotua v. Interstate Hotels and Resorts, Inc.*, No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512, at *3 (C.D. Cal. March 3, 2015)(finding removal proper where plaintiff only contested the sufficiency of Defendant's evidentiary support and failed to provide contrary evidence).

B. Failure to Provide Accurate Wage Statements.

In the Third Cause of Action, Plaintiffs allege Defendant "failed to properly and accurately itemize the gross wages earned, the net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate by the employee." [Doc. No. 1-2 at 236, ¶67.] On that basis, Plaintiffs seek to recover "liquidated damages" for the Proposed Class pursuant to Cal. Lab. Code §226(e) in an amount equal to fifty dollars ($50) per employee for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent period, not to exceed $4,000 per employee. [*Id.* at 237,¶68.]

In the opposition, Defendant provides (based on its payroll records) the actual number of wage statements received by each of the PCMs during the relevant period. [Doc. No. 16 at 8-12.] Defendant also uses the average workweek meal break infraction rate derived from the Breaks Data discussed above. *Id.* From that data, Defendant determines that 234 drivers received 41 or more weekly wage statements during the limitations period. *Id.* Because each such driver would be entitled to the maximum $4,000 penalty, Defendant estimates the AIC on the inaccurate wage statements claim is at least **$936,000.00**. [*Id.*at 25.]

11

17cv2340-CAB-NLS

As set forth above, Defendant has now provided evidence as to a reasonable violation rate, and Plaintiffs have not provided any counter-evidence. Therefore, Defendant's estimate of the AIC for this claim is reasonable.

C. Waiting Time Penalties.

The Fourth Cause of Action seeks waiting time penalties pursuant to Cal. Labor Code §203 in the amount of "thirty days of pay as penalty" at the regular hourly rate of pay "for all employees who terminated employment during the [class period]." [Doc. No. 1-2 at 238, ¶76.] In the opposition, Defendant presents evidence that 106 PCMs left their employment during the relevant time period, the average effective hourly rate was $28.36 and they worked an average of 9.13 recorded hours per day. [Doc. No. 16 at 8-12.] Using a 100% violation rate, Defendant calculates the AIC for waiting time penalties is at least **$721,478.40**. [Doc. No. 16 at 26.]

This Court has already approved Defendant's calculation methodology for estimating the waiting time penalties. [Case No. 16cv2837, Doc. No. 18 at 10-11.] Defendant's use of a 100% violation rate is reasonable because the SAC seeks penalties for all employees who terminated employment. Because Defendant's calculation is supported by evidence and Plaintiff does not offer any contrary evidence, Defendant's AIC estimate for waiting time penalties is reasonable.

D. Release of Overlapping Claims.

Plaintiffs also argue that claims released in overlapping class actions must be excluded from the AIC. [Doc. No. 13-1 at 14-15.] While any releases signed by PCMs may be the basis of an affirmative defense, a potential defense to the action that could lower the amount of recovery does not preclude federal jurisdiction. "The fact that the complaint discloses the existence of a valid defense to the claim" does not eliminate federal jurisdiction, nor do events "occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit." *St. Paul Mercury Indemnity Co.,* 303 U.S. 283, 289-90 (1938); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (2010) (if a district court had to evaluate every possible defense that could reduce recovery

below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction). Therefore, the release of any overlapping class claims is not relevant to the calculation of the AIC.

E. Other Claims.

The total of Defendant's reasonable AIC estimates for meal and rest breaks (excluding unpaid rest breaks), inaccurate wage statements, and waiting time penalties exceeds $5 million ($$4,622,194.50 + $936,000.00 + $721,478.40 = **$6,279,672.90**). Therefore, the Court does not reach the reasonableness of the minimum wage claim AIC, nor the issue of including attorneys' fees in AIC calculations.

## Conclusion

For the foregoing reasons, Plaintiff's motion to remand is **DENIED**.

Dated: March 8, 2018

Hon. Cathy Ann Bencivengo
United States District Judge